IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Daniel Lee and all others similarly situated, | ) ) ) | |
| | ) | CLASS ACTION COMPLAINT |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:14-cv-00099-TCB-LTW |
| Ocwen Loan Servicing, LLC., | ) ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATING THE FAIR DEBT COLLECTION PRACTICES ACT

**COMES NOW**, the Plaintiff, Daniel Lee, by and through the undersigned counsel and files this First Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff files this First Amended Complaint and Demand for Jury Trial as a matter of right against the above named Defendant, showing the Court as follows:

## INTRODUCTION

1.

This action seeks redress for collection practices utilized by Defendant Ocwen Loan Servicing, LLC. (hereinafter "Defendant Ocwen or "Defendant") that violate the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692(e) and §1692g(a)(2) by not identifying the true creditor in an attempt to

collect a debt, § 1692(e) and §1692g(a)(1) for misstating the total amount due in a letter sent in an attempt to collect a debt and finally § 1692e(2)(B) for attempting to collect fees when there is no contract between the parties authorizing the collection of fees.

## PARTIES AND SERVICE

2.

Plaintiff Daniel Lee is a natural person the subject of the dispute complained about herein and is currently a resident of Gwinnett County, Georgia.

3.

Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. §1692a(3), in that Defendant sought to collect from Plaintiff a debt in default allegedly owed to another, that was for personal, family or household purposes, to wit, residential mortgage debt incurred to finance the purchase of Plaintiff's primary residence.

4.

Defendant Ocwen is a limited liability company organized and existing under the laws of the state of Delaware and is engaged in the business of collecting on promissory notes in default for "creditors" as defined in the FDCPA.

5.

Defendant Ocwen is a debt collector as defined in 15 U.S.C. § 1692a(6) because it uses the mail system in business, the principal purpose of which, is the

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

6.

Defendant Ocwen may be served with a copy of the summons and complaint by leaving a copy with its registered agent for service, Corporation Service Company located at 40 Technology Parkway, South, Suite 300, Norcross, Georgia 30092.  Defendant was served on January 15, 2014.

## JURISDICTION AND VENUE

7.

The court has jurisdiction to grant the relief sought by Plaintiff pursuant to 15 U.S.C. § 1692k(d).

8.

Venue in this court is proper in that defendant directed its collection efforts into the Northern District of Georgia and the named Plaintiff resides within the Northern District of Georgia.

## FACTUAL ALLEGATIONS

9.

On or about March 4, 2004, Plaintiff signed a promissory note in favor of Accredited Home Lenders, Inc. that was used to finance the purchase of his primary residence.

10.

Plaintiff's promissory note is a negotiable instrument as defined in O.C.G.A.

§ 11-3-104.[1]

11.

Plaintiff failed to make payments when due under the note in September

2010 and went into default at that time.

12.

On or about July 1, 2013 Defendant was assigned the servicing rights to

Plaintiff's loan while it was still in default.

13.

Defendant is therefore a debt collector covered by the FDCPA.

_____

[1] (a) Except as provided in subsections (c) and (d) of this Code section, "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

  (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

  (2) Is payable on demand or at a definite time; and

  (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:

    (i) An undertaking or power to give, maintain, or protect collateral to secure payment;

    (ii) An authorization or power to the holder to confess judgment or realize on or dispose of collateral; or

    (iii) A waiver of the benefit of any law intended for the advantage or protection of an obligor…

14.

On or about July 10, 2013 Plaintiff received an initial communication letter and debt validation letter sent pursuant to 15 U.S.C. § 1692(g) in the mail from Defendant Ocwen (hereinafter "Letter").  A true and correct copy of the Letter is attached hereto as Exhibit "A".

15.

The Letter advised the Plaintiff the communication was from a debt collector and that the current "creditor" [2] is MASTR 2004-HE1.

16.

Plaintiff admits he is still in default, as that term is defined in the note, on his residential mortgage loan.

17.

Plaintiff denies he owes a debt to MASTR 2004-HE1, as stated in the Letter.

18.

MASTR 2004-HE1 is a real estate mortgage investment conduit (hereinafter "REMIC") that was formed in New York on or about September 4, 2004 pursuant to the terms of that certain Trust document commonly referred to as a Pooling and

---

[2]15 USC § 1692a(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

Servicing Agreement (hereinafter "PSA") attached hereto as Exhibit "C" for the Court's reference.

19.

REMICs are required to be passive vehicles, meaning that mortgages cannot be transferred in and out of the trust once the closing date has occurred, unless the trust can meet very limited exceptions under the Internal Revenue Code. I.R.C. §860G.  The 90 day requirement is imposed by the I.R.C. to ensure that the trust remains a static entity.

20.

The PSA states as follows:

SECTION 11.04. Governing Law.

"This Agreement shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the partie hereunder shall be determined in accordance with such laws."

(PSA @ pp. 281, located in lower left corner of page)

21.

SECTION 2.01. Conveyance of the Mortgage Loans.

**In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, the Trust Administrator (or the Custodian with respect to the Deutsche Bank Files), the following documents or**

**instruments with respect to each Mortgage Loan so transferred and assigned**

**(a *"Mortgage File"*): (1) the original Mortgage Note, endorsed in blank or in**

**the following form: *"Pay to the order of U.S. Bank National Association, a***

***Trustee under the applicable agreement, without recourse,"* with all prior and**

**intervening endorsements showing a complete chain of endorsement from the**

**originator to the Person so endorsing to the Trustee… .**

(PSA @ pp. 118, lower left corner of page)

22.

The cut-off date as defined in the PSA is September 1, 2004

(PSA @ pp. 301, lower left corner of page)

23.

The REMIC has a cut-off date of September 1, 2004 whereby all loans that

were to make up the trust had to be transferred by that date or within 90 days under

limited circumstances.

24.

Defendant filed a motion to dismiss relying on the assignment attached

hereto as Exhibit "B" as conclusive proof U.S. Bank at trustee is the creditor as

defined in the FDCPA.[3]

---

[3] The assignment purports to transfer both the deed to the Property and the promissory note secured thereby, this complaint concerns only the transfer of the Plaintiff's promissory note.

25.

Exhibit "B" shows the Plaintiff's promissory note was assigned on

December 3, 2008 to U.S. Bank as trustee by Mortgage Electronic Registration

Systems, Inc. some 4 years and 3 months after the closing date.[4]

26.

New York trust law requires strict compliance with the trust documents; any

transaction by the trustee that is in contravention of the PSA is void, meaning that

the transfer is an *ultra vires* act and is unlawful.

27.

New York Estates, Powers & Trusts Law section 7-2.4, provides:  "If the

trust is expressed in an instrument creating the estate of the trustee, every sale,

conveyance or other act of the trustee in contravention of the trust, except as

authorized by this article and by any other provision of law, is void.

28.

The assignment of Plaintiff's promissory note signed in favor of Accredited

Home Lenders, Inc. by Mortgage Electronic Registration Systems, Inc. violates

section 2.01 *supra* of the PSA because the assignment must come from the

Depositor in the form of an endorsement on the promissory note itself.

---

[4] This fact is not in dispute, indeed is culled from Defendant's very own motion to dismiss (dkt# 6-1  pp. 10-11)

29.

The assignment of Plaintiff's loan to U.S. Bank as trustee for MASTR 2004-HE1 on December 3, 2008 after the cut-off date is void and off no force or effect under New York Estates, Powers & Trusts Law section 7-2.4.

30.

Mortgage Electronic Registration Systems, Inc. was without authority to assign the Plaintiff's promissory note to U.S. Bank as trustee for MASTR 2004-HE1 because it had no legal or equitable interest in the note to assign.

31.

MERS has previously successfully asserted in other lawsuits that it does not hold or own promissory notes. For example, in a case before Nebraska Supreme Court, *Mortgage Elec. Reg .Sys, Inc. v. Nebraska Department of Banking,* 270 Neb. 529, 704 N.W. 2d 784 (2005), wherein MERS was sued by the Nebraska Banking Commission for the purpose of regulating MERS as a lender, MERS argued successfully that it was not a lender.  MERS argued that it is *not* authorized to engage in the practices that would make it a party to either the enforcement of mortgages or the transfer of mortgages.  In *Mortgage Elec. Reg .Sys, Inc. v. Nebraska Department of Banking,* 270 Neb. 529, 704 N.W. 2d 784 (2005), MERS challenged an administrative finding that it was a mortgage banker subject to license and registration requirements.  The Nebraska Supreme Court found in favor

of MERS, noting, "MERS has no independent right to collect on any debt because MERS itself has not extended any credit, and **none of the mortgage debtors owe MERS any money."** 270 Neb. at 535.  The Court in Nebraska further noted the following representation made by MERS:

> MERS argues that it *does not acquire mortgage loans* and is therefore not a mortgage banker under § 45-702(6) because *it only holds legal title* to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it *does not own the promissory notes* secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."

704 N.W. 2d 784, 787 (citing brief for MERS) (emphasis added). According to the Court, counsel for MERS further explained:

> [T]hat MERS does not take applications, underwrite loans, make decisions on whether to extend credit, collect mortgage payments, hold escrows for taxes and insurance, or *provide any loan servicing functions whatsoever. MERS merely tracks the ownership of the lien* and is paid for its services through membership fees charged to its members.

*Id*. (emphasis added). In finding that MERS was not a "mortgage banker," the Court stated:

> In other words, through its services to its members as characterized by the district court, MERS does not acquire "any loan or extension of credit secured by a lien on real property." MERS does not itself extend credit or acquire rights to receive payments on mortgage loans. Rather, the *lenders retain the promissory notes* and servicing rights to

-10-

the mortgage, while *MERS acquires legal title to the mortgage for recordation purposes.*

MERS *serves as legal title holder in a nominee capacity*, permitting lenders to sell their interests in the notes and servicing rights to investors without recording each transaction. But, simply stated, *MERS has no independent right to collect on any debt* because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money.

*Id*. at 788. (emphasis added).

32.

Defendant is therefore judicially estopped from arguing otherwise in this litigation.

33.

US Bank as trustee for MASTR 2004-HE1 is not a creditor as defined by the FDCPA because it did not offer or extend credit creating the debt or to whom a debt is owed.

34.

As a direct and proximate result of Defendant's misidentification of the creditor in the Letter, Plaintiff has had to hire legal counsel and incur additional fees and expenses to identify the true creditor.

35.

Defendant failed to correctly state the total amount due in the Letter.

36.

Defendant overstated the amount of collection costs due in the Letter.

## COUNT I
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

37.

Plaintiff repeats and realleges the allegations in the preceding paragraphs of this Complaint and incorporates the same herein by this specific reference as though set forth herein in full.

38.

15 U.S.C. § 1692(e) states that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

39.

By mis-identyfing the creditor in the Letter Defendant used a false, deceptive, or misleading representation or means in connection with the collection of the Plaintiff's debt in violation of 15 U.S.C. § 1692(e).

40.

By understating the total amount due in the Letter Defendant used a false, deceptive, or misleading representation or means in connection with the collection of the Plaintiff's debt in violation of 15 U.S.C. § 1692(e).

41.

Pursuant to 15 U.S. C. § 1692e a debt collector may not use any false,

deceptive, or misleading representation or means in connection with the collection

of any debt. Without limiting the general application of the foregoing, the

following conduct is a violation of this section:

(2) The false representation of—
(B) any services rendered or compensation which may be lawfully received by any
debt collector for the collection of a debt.

42.

Defendant violated 15 U.S.C. § 1692e(2)(B) because it stated in the Letter

$12,076.90 in collection costs where due when there is no contract between the

parties authorizing the collection of any amount as collection costs.

43.

15 USC § 1692g(a)(validation of debts) requires a debt collector within five

days after the initial communication with a consumer in connection with the

collection of any debt, a debt collector shall, unless the following information is

contained in the initial communication or the consumer has paid the debt, send the

consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

44.

Defendnat Ocwen misstated the total amount of the debt due in the Letter in violation of 15 USC § 1692g(a)(1).

45.

Defendant Ocwen failed to identify the true creditor in the Letter in violation of 15 USC § 1692g(a)(2).

46.

By reason of the conduct alleged herein, Defendant violated the FDCPA and is liable to the Plaintiff for actual damages and statutory damages of up to one thousand dollars ($1,000) per violation pursuant to 15 U.S.C. 1692k *et seq*.

## COUNT II
## CLASS ALLEGATIONS

47.

The named Plaintiff and others similarly situated to him repeat and reallege the allegations in the preceding paragraphs of this Complaint and incorporate the same herein by reference as though set forth herein in full.

48.

Plaintiff brings this claim on behalf of a proposed class, consisting of:

(a) all "consumers" as defined in the FDCPA;

(b) that were sent a letter in connection with the collection of debt identical to or substantially similar to Exhibit "A" from Defendant Ocwen;

(c) that misstated the total amount of the debt owed and/or;

(d) that failed to identify the true "creditor" as defined in the FDCPA; and/or

(e) that showed any amount in collection fees when there was no contract authorizing the collection;

(f) to an address in the United States;

(g) on or before a date one year prior to the filing of this complaint.

49.

Plaintiffs seek class action certification and are authorized to maintain this suit as a class action pursuant to 15 U.S.C. § 1692k(a)(2)(B) and the Federal Rules of Civil Procedure 23(b)(1); 23(b)(2) and 23(b)(3).

50.

The persons included in each Class set out above are so numerous that joinder of all parties is impractical.

51.

Upon information and belief there are more than one thousand (1,000) members of the proposed class.  More precise information concerning the size and identification of class members will be obtained through discovery and set forth in Plaintiffs subsequent Motion for Class Certification.

52.

The claim of each potential class member is relatively small, such that it is not economically feasible to bring individual actions for each member of the class.

53.

The claims of class representative Daniel Lee are typical of the claims of the proposed class.

54.

The questions of law and fact which are common among members of

the class are:

(i) whether Defendant violated the FDCPA, 15 U.S.C. § 1692(e) and

§1692(g)(a)(2) by failing to disclose the identity of the true creditor as defined in

the FDCPA;

(i)  whether Defendant violated 15 U.S.C. § 1692(e) and 15 USC § 1692g(a)(1) by

failing to state the correct amount due as of the date of the Letter; and

(iii) whether Defendant violated 15 U.S.C. § 1692e(2)(B) by attempting to collect

fees.

55.

The questions of law or fact common to the members of the class

predominate over any questions affecting only individual members and a class

action is superior to any other method of fair adjudication of the class presented.

56.

The prosecution of separate actions by individual members of the class

would create a risk of inconsistent or varying adjudications with respect to

individual members which would establish incompatible standards of conduct for

the party opposing the class.

57.

The representative party and their counsel will take those actions necessary

to protect the interests of the class members.

58.

Plaintiff has retained counsel with experience in complex litigation and consumer protection statutes.

59.

The basis for class certification under Rule 23(b)(1)(A) is that the prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the Defendants.

60.

The basis for class certification under Rule 23(b)(1)(B) is that adjudication with respect to individual members of the class would be, as a practical matter, dispositive of the interests of the other members not parties to the adjudications.

61.

The basis for class certification under Rule 23(b)(2) is that the Defendant has refused to act on grounds generally applicable to the class thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## <u>DEMAND FOR TRIAL BY JURY</u>

61.

Plaintiff and the putative class members request a trial by jury on all of their claims so triable.

**WHEREFORE**, Plaintiffs request that the Court enter judgment in favor of Plaintiff and putative class members and against Defendant for:

a.  actual damages for the Plaintiff in any amount to be determined by the enlightened consciousness of a jury;

b.  statutory damages for the Plaintiff and each member of the class;

c.  attorney's fees, litigation expenses and costs of suit; and

d.  such other or further relief as the Court deems proper.

Respectfully submitted this 14th day of March, 2014

/s/ Harlen S. Miller, III
Harlan S. Miller, III, Esq.
Of Counsel
Parks, Chesin & Walbert, P.C.
75 14th Street, 26th Floor
Atlanta, Georgia 30309

## <u>CERTIFICATION OF COMPLIANCE WITH L.R. 5.1B</u>

I hereby certify that the foregoing has been computer processed with 14 point New Times Roman Font in compliance with the United States District Court for the Northern District of Georgia Local Rule 5.1B.

Dated: March 14th, 2014

<u>/s/ Harlen S. Miller, III</u>
Harlan S. Miller, III, Esq.
Of Counsel
Parks, Chesin & Walbert, P.C.
75 14th Street, 26th Floor
Atlanta, Georgia 30309